NUMBER 13-04-00455-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

                                                                                                                       


ELIZABETH J. WILLIAMS,                                                               Appellant,

 

                                                             v.

 

CORPUS CHRISTI INDEPENDENT SCHOOL
DISTRICT,                Appellee.

                                                                                                                       


     On appeal from the 94th District Court of Nueces County,
Texas.

                                                                     
                                                  

                       MEMORANDUM OPINION

 

                  Before Justices Hinojosa, Yañez,
and Garza

                         Memorandum
Opinion by Justice Hinojosa

 








This is an appeal from a summary judgment rendered
in favor of appellee, Corpus Christi Independent School District, in a worker=s compensation retaliation suit brought by
appellant, Elizabeth J. Williams.  In
five issues, appellant contends the trial court erred in (1) denying the
discovery of certain documents, (2) overruling objections to the District=s summary judgment evidence, (3) granting summary
judgment on the workers= compensation retaliation claim, (4) granting
summary judgment on the age and gender discrimination claims, and (5) impliedly
finding that the District=s policies are not contrary to public policy.  We affirm.

                                                   A.  Factual
Background

Appellant was hired by the District in July
1996, and employed as a bus driver until she sustained an on-the-job injury on
October 4, 2001.  After appellant was
injured, Samuel Cardona, an employee with the District=s benefits office, prepared an AEmployer=s First Report of Injury or Illness.@  The
report was mailed on October 11, 2001, and a workers= compensation benefits claim was initiated
for appellant.[1]

Following its written policy, the District
presented appellant with the payment options offered by the District for
injured employees.  Appellant could
receive (1) seventy to seventy-five percent of her weekly wage from workers= compensation, (2) one hundred percent of
her wage, by supplementing her workers= compensation benefits with accrued sick
leave benefits, or (3) full wages if she used only her accrued sick leave
benefits.  Appellant chose to receive
workers= compensation benefits only.  Appellant claims that the District pressured
her to use some or all of her accrued sick leave.  The District contends it was only trying to
help appellant by letting her know that she could supplement her workers= compensation benefits with accrued sick
leave benefits.

Dr. Bernard Segar began treating appellant
for her injuries on October 16, 2001. 
Appellant was notified by letter, dated October 18, 2001, that the first
ATemporary Income Benefit@ payment had been mailed.








The District has a written policy that
applies to all employees not able to work for extended periods of time.  The maximum leave time allowed for any
temporary disability is 180 calendar days. 
Upon returning from disability leave, the employee is placed on a
priority list and is returned to duty, contingent upon there being a vacancy in
a job for which the person is qualified. 
When such a vacancy occurs, the employee is notified by mail.  If the employee fails to respond to the
notice within ten days, a final attempt to contact the employee is made by
telephone.  An employee=s failure to respond or communicate is
deemed an election to not report, and the employee=s employment is then terminated.

On March 4, 2002, the District sent appellant
a letter advising her (1) of the District=s 180 day policy, (2) that she had already
used more than 150 days, (3) that she had Athirty (30) calendar days . . . to submit to
the Office of Employee Benefits the attached physical requirement form that
needed to be completed by [her] examining physician,@ and (4) if she failed Ato submit the attached form by April 3,
2002, [she would] be placed on indefinite medical leave@ (emphasis in original).  The letter also described the District=s procedure for her to return to duty.

Dr. Segar gave appellant a limited medical
release, effective March 25, 2002, which allowed appellant to return to work,
but specified that she was to perform Asedentary [duties] only with a brace.@  On
March 25, 2002, appellant took the medical release to Cardona.  Cardona informed appellant that the District
did not currently have any Alight duty@ positions suitable for her limited ability
to work.








On March 27, 2002, the District mailed
appellant a letter.  The letter stated
that (1) appellant had been notified she was approaching the 180 day limit on
employee leave of absence for temporary disability, (2) appellant would be
placed on indefinite medical leave effective March 27, 2002, and (3) appellant
would Athen be placed on a priority list and be
restored to duty contingent upon there being a vacancy for which the
[appellant] is qualified.@

On May 20, 2002, 228 days after the October
4, 2001 injury, Dr. Segar released appellant to return to work, without
restrictions, effective May 22, 2002.  An
AApproval to Return to Work@ stamp was placed on the document and signed
by the District=s Office of Employee Benefits, completing
the first step in allowing appellant to return to work.  However, appellant did not file the required
application form to be placed on the priority list.

On July 10, 2002, appellant filed a AClaim of Discrimination@ with the Texas Commission on Human Rights,
alleging that discrimination had occurred between March 25, 2002 and May 20,
2002.  Appellant filed suit against the
District on November 8, 2002, alleging that the District had (1) violated labor
code sections 451.001 et seq., 21.051 et seq., 21.101 et seq., and 21.055, (2)
retaliated against her for filing and pursuing her workers= compensation benefits, and (3) acted with
malice and reckless indifference which entitled her to exemplary damages.








The District denied appellant=s allegations and filed both traditional and
no-evidence motions for summary judgment asserting (1) there was no evidence
showing that the District had placed appellant on indefinite medical leave
because she had filed a worker=s compensation claim, and (2) there was no
evidence showing that appellant had been discriminated against because of her
race, age, or gender and that others similarly situated were treated
differently.  In support of its motion
for summary judgment, the District relied upon the following: (1) affidavits
from (a) Helen Gurley, (b) Engledina Garcia, the District=s custodian of records for Records
Pertaining to Driver Assignments, (c) Stephan Horner, and (d) the District=s custodian of records for Printouts of Bus
Driver Populations; (2) the deposition of appellant; and (3) appellant=s personnel records.

In response to the District=s motions for summary judgment, appellant
(1) asserted that the motion was premature because more time was needed for discovery,
(2) objected to certain affidavits attached to the District=s motion, and (3) argued that she had
presented more than a scintilla of evidence of a disputed material fact.  In support of her response, appellant relied
upon thirty-six exhibits previously submitted to the trial court.

On July 9, 2004, the trial court granted a
partial summary judgment in favor of the District on appellant=s claims for discrimination under section
21.051 of the Texas Labor Code.  The
trial court later granted summary judgment in favor of the District on
appellant=s remaining claims for retaliatory discharge
under section 451.001 of the labor code and signed a final judgment on July 30,
2004, that appellant take nothing by her suit. 
This appeal ensued.

                                                     B.  Denial
of Discovery

In her first issue, appellant contends the
trial court erred in denying her request for the production of certain items
during discovery.








The trial court is imbued with discretion to
rule on matters related to discovery.  Lopez v. Martin, 10 S.W.3d 790, 795 (Tex.
App.BCorpus Christi 2000, pet. denied); Gen.
Tire, Inc. v. Kepple, 970 S.W.2d 520, 526 (Tex. 1998); Jampole v. Touchy,
673 S.W.2d 569, 574‑75 (Tex. 1984). 
We will not reverse the decision of the trial court unless there is some
indication that the court acted without reference to guiding rules and
principles or acted arbitrarily and unreasonably.  Lopez, 10 S.W.3d at 795; Koslow=s v. Mackie, 796 S.W.2d 700, 704 (Tex. 1990).  We presume the record to be a complete record
for the purposes of reviewing the stated issues.  Tex.
R. App. P. 34.6(c)(4).  To
determine whether error has Aprobably caused the rendition of an improper
judgment,@ the content of documents denied during
discovery must be available to the appellate court.  Tex.
R. App. P. 41.1(a)(1). 

In her first motion to compel, appellant
sought the production of documents requested in five of her
interrogatories.  The trial court agreed
with appellant that the District should produce certain documents, agreed to
review, in camera, two files to determine if they should be produced, and
reserved its ruling on all other matters for thirty days.  Appellant subsequently filed a second motion
to compel requesting several more documents. 
The trial court denied appellant=s request for production of the documents
inspected in camera and denied all of the requests for production contained in
her second motion to compel.

The District objected to appellant=s request for production of documents.  The District argued the items sought Aeither do not relate to the grounds of
relief [appellant] has sought or seek information or documents that are unduly
burdensome.@

Appellant failed to bring forward, under
seal, the documents reviewed by the trial court in camera.  Appellant also failed to bring forward all
documents requested, but denied by the trial court.  Without these documents, we cannot say that
the trial court abused its discretion in denying production of the requested
documents, or that any error committed by the trial court has probably caused
the rendition of an improper judgment.  See Tex. R. App. P. 41.1(a)(1).  Appellant=s first issue is overruled.

                                                                C.  Affidavits








In her second issue, appellant contends the
trial court erred in overruling her objections to several affidavits filed by
the District as summary judgment evidence.

We apply an abuse of discretion standard to
the question of whether a trial court erred in an evidentiary ruling.  Owens Corning Fiberglass Corp. v. Malone,
972 S.W.2d 35, 43 (Tex. 1998).   We must
uphold the trial court=s evidentiary ruling if there is any
legitimate basis for its ruling.  Id.  If the evidentiary ruling is erroneous, we
will not reverse the ruling unless the error probably caused the rendition of
an improper judgment.  Tex. R. App. P. 44.1; Owens‑Corning
Fiberglass Corp., 972 S.W.2d at 43. 
Generally, a complaining party must demonstrate that the judgment turns
on the particular evidence excluded or admitted to succeed on a challenge to a
trial court=s evidentiary ruling.  Interstate Northborough P=ship v. State, 66 S.W.3d 213, 220 (Tex. 2001).

Althought appellant asserts that the trial
court=s admission of the affidavit was error, she
does not present us with any argument showing how its admission probably caused
the rendition of an improper judgment. 
Without such a showing, we will not reverse the judgment of the trial
court.  See Tex. R. App. P.  44.1; McCraw v. Maris, 828 S.W.2d 756,
757 (Tex. 1992).  Appellant=s second issue is overruled.

                                                      D.  Summary
Judgment

The District filed a motion for summary judgment
on both traditional and no-evidence grounds, Tex.
R. Civ. P. 166a(c), (i), and the trial court granted the motion.  In her third and fourth issues, appellant
contends the trial court erred in granting the motion.

                                                          1.  Standard of Review








We review the granting of a traditional
motion for summary judgment de novo.  See
Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Tex.
Commerce Bank Rio Grande Valley v. Correa, 28 S.W.3d 723, 726 (Tex. App.BCorpus Christi 2000, pet. denied).  To prevail, the moving party has the burden
of showing that there is no genuine issue of material fact and that it is
entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  In deciding whether there is a genuine issue
of material fact, evidence favorable to the non-movant will be taken as true,
and all reasonable inferences made, and all doubts resolved, in its favor.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  Summary
judgment is proper if the movant disproves at least one element of each of the
plaintiff=s claims or affirmatively establishes each
element of an affirmative defense to each claim.  Id. 
Thus, as movant in a traditional motion for summary judgment, the
District had the burden of submitting summary judgment evidence disproving at
least one essential element of each of appellant=s causes of action.  See Sci. Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).








In a no‑evidence motion for summary
judgment, the movant asserts there is no evidence of one or more essential
elements of claims upon which the opposing party would have the burden of proof
at trial.  Tex. R. Civ. P. 166a(i). 
A no‑evidence motion for summary judgment is essentially a
pretrial directed verdict, to which the appellate courts apply a legal
sufficiency standard of review.  Gen.
Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832‑33 (Tex.
App.BDallas 2000, no pet.); Jackson v. Fiesta
Mart, Inc., 979 S.W.2d 68, 70 (Tex. App.BAustin 1998, no pet.).  In response to a no‑evidence motion,
the non‑movant is only required to present evidence that raises a genuine
fact issue on the challenged elements.  McCombs
v. Children=s Med. Ctr., 1 S.W.3d 256, 258 (Tex. App.BTexarkana 1999, pet. denied).  A no‑evidence motion for summary
judgment is properly granted only if the non‑movant fails to bring forth
more than a scintilla of probative evidence to raise a genuine issue of material
fact as to the challenged element of
the claims.  Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70‑71.

In reviewing a summary judgment under either
standard, Aall evidence is to be construed in favor of the non‑movant,
to whom every reasonable inference is allowed and on whose behalf all doubts
are resolved.@  Alvarez
v. Anesthesiology Assocs., 967 S.W.2d 871, 874 (Tex. App.BCorpus Christi 1998, no pet.).  AWhen the trial court does not specify the basis for
its summary judgment,@ as is the case here, Athe
appealing party must show it is error to base it on any ground asserted in the
motion.@   See Star‑Telegram,
Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995).  AThe appellate court must affirm the summary judgment
if any one of the movant=s theories has merit.@  See id.

                                                            2.  Retaliation Claim

In her third issue, appellant contends the trial
court erred in granting the District=s motion for summary judgment on her workers= compensation retaliation claim. 

                                                              a.  Applicable Law

Section 451.001 of the Texas Labor Code
provides as follows:

A person may not discharge or in any other
manner discriminate against an employee because the employee has:

 

(1)       filed a workers= compensation claim in good faith;

 

(2)       hired a lawyer to represent the employee
in a claim;

 

(3)       instituted or caused to be instituted in
good faith a proceeding under Subtitle A; or

 








(4)       testified or is about to testify in a
proceeding under Subtitle A.

 

Tex.
Lab. Code. Ann. ' 451.001 (Vernon 2006).

To prevail on a
section 451.001 cause of action, the plaintiff must establish a prima facie
case that (1) she engaged in a protected activity, (2) an adverse employment
action occurred, and (3) there was a causal connection between participation in
the protected activity and adverse employment action.  West v. Maint. Tool & Supply Co.,
89 S.W.3d 96, 105 (Tex. App.BCorpus Christi 2002, no pet.).  








The burden of proof is on the employee to demonstrate
a causal link between the discharge and the filing of a workers= compensation claim, an element of her case
for retaliatory discharge.  Tex. Lab. Code. Ann. ' 451.002(c) (Vernon 2006); West, 89
S.W.3d at 105; Garcia v. Allen, 28 S.W.3d 587, 600 (Tex. App.BCorpus Christi 2000, pet. denied).  The employee must prove that but for the
filing of the workers= compensation claim the discharge would not
have occurred when it did.  City of
Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000);[2]
Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996).  An employee can meet her burden without
showing that she was discriminated against solely because of the filing of a
workers= compensation claim; however, she must show
that the filing of the claim was at least a determining factor in the
discriminatory conduct. West, 89 S.W.3d at 105; Terry v. S. Floral
Co., 927 S.W.2d 254, 257  (Tex. App.BHouston [1st Dist.] 1996, no writ).  This causal connection may be established by
direct or circumstantial evidence and by reasonable inferences arising from
it.  Allen, 28 S.W.3d at 600.

Circumstantial evidence sufficient to
establish a causal link between termination and filing a workers= compensation claim includes the following:
(1) knowledge of the compensation claim by those making the decision on
termination; (2) expression of a negative attitude toward the injured employee=s condition; (3) failure to adhere to
established company policies; (4) discriminatory treatment in comparison to
similarly situated employees; and (5) evidence that the stated reason for the discharge was false. Cazarez,
937 S.W.2d at 450‑51; Allen, 28 S.W.3d at 600; Gorges
Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 665 (Tex. App.BCorpus Christi 1997, no pet.).  Once an employee has established the causal
link, the employer has the burden to rebut the allegation of retaliatory
discharge by showing that there was a legitimate reason behind the
termination.  Allen, 28 S.W.3d at
600.  Thereafter, to survive the employer=s motion for summary judgment, the burden shifts back
to the employee to produce controverting evidence of a retaliatory motive.  Id.

                                                           b.  Causation Analysis

Appellant=s change in employment status occurred more than
five months after she filed for workers= compensation benefits.  Thus, appellant is not entitled to a
presumption that her being placed on indefinite medical leave was retaliatory. See
Tex. Gov=t Code Ann. ' 554.004(a) (Vernon 2004) (allowing for rebuttable
presumption of causal connection if adverse employment action occurs not later
than 90 days after employee reports violation of law).








Given the proper standard of review, we must
determine whether any evidence presented by appellant raises a genuine issue of
material fact on the question of whether, but for appellant=s filing of a workers= compensation claim, the District would have
put appellant on indefinite medical leave when it did.  Cazarez, 937 S.W.2d at 450‑51.  It is undisputed that the District had
knowledge of appellant=s workers= compensation claim. However, knowledge of
the claim alone is not enough to raise a fact issue as to whether appellant was
wrongfully placed on indefinite medical leave because she filed the claim.  See Allen, 28 S.W.3d at 601.  It simply places the plaintiff within the
protected class and must be considered with the remaining evidence.  Id.

Appellant=s evidence of negative attitude toward her
injured condition consists of her deposition and statements from two other
employees, Gloria Rodriguez and Ramiro Flores. 
Comments made by others may provide some evidence of discriminatory
intent if they are: (1) related to the protected class of persons of which the
plaintiff is a member; (2) proximate in time to the termination; (3) made by
individuals with authority over the employment decision; and (4) related to the
employment decision at issue.  Medina
v. Ramsey Steel Co., 238 F.3d 674, 683 (5th Cir. 2001); Wal‑Mart
Stores, Inc. v. Bertrand, 37 S.W.3d 1, 10 (Tex. App.BTyler 2000, pet. denied).  Mere stray remarks, however, are typically
insufficient to show discrimination.  M.D.
Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22, 25 (Tex.
2000).  

Rodriguez states in her affidavit that she
was injured while watering down her bus on CCISD property, and when she
reported her injury to Cardona, he Agot upset and said in a harsh accusing tone,
>you got injured again?  What did you do this time?=@ However, these comments were not expressed
toward appellant=s injured condition, but towards the injured
condition of Rodriguez.  See Cazarez,
937 S.W.2d at 450‑51.   








In his affidavit, Flores states, AThere was an attitude by CCISD Risk
Management people that employees were hurt because of the employees [sic] own
fault and not because of the bad condition of the parking lot and property.@ 
However, we conclude that Flores=s statement is merely conclusory and not
competent summary judgment evidence.  See Cazarez,
937 S.W.2d at 451; Tex. Div.‑Tranter,
Inc. v. Carrozza, 876 S.W.2d 312, 314 (Tex. 1994).

In her deposition, appellant testified that
Mr. Rosenauer, Ms. Williams,  Ms.
Trevino, and Mr. Cardona displayed a negative attitude toward her.  The record shows that neither Rosenauer, the
Deputy Assistant Director of Transportation, nor Williams, his receptionist,
had the authority to change appellant=s employment status.  Similarly, Trevino, the District=s insurance adjuster, could not affect or
influence appellant=s employment status.  Therefore, the expression of Rosenauer=s, Williams=, and Trevino=s attitude toward appellant=s injured condition is insufficient to show
discrimination.  

Appellant further contends that Cardona tried to
persuade her to elect to receive pay from accrued sick leave rather than from
workers= compensation. 
Even if true, this attitude does not reflect negatively on employees
that file workers= compensation claims or on appellant
personally.  The District explained that
because workers= compensation benefits are not one hundred percent
of the employee=s wage, some employees prefer to supplement their
workers= compensation benefits with portions of accrued sick
leave pay to make their total payment one hundred percent of the wage they
earned prior to injury.








The remaining allegations made by appellant in her
deposition do not raise fact issues; they are merely conclusory.  See Cazarez, 937 S.W.2d at 451 (an
employee=s subjective beliefs are merely conclusions and do
not raise a fact issue precluding summary judgment in a retaliatory discharge
action); Carrozza, 876
S.W.2d at 314.

The record contains no evidence that the
District failed to follow its 180-day policy. 
Also, the record contains no evidence that the District treated
similarly situated employees differently than appellant.[3]

For the fifth factor B evidence that the stated reason for the
adverse employment action was false B appellant contends a jury could infer that
she was placed on indefinite medical leave because she chose to use workers= compensation benefits simply because the
evidence shows (1) she filed for workers= compensation benefits and (2) 180 days
later she was placed on indefinite medical leave.  However, the Texas Supreme Court has held
that the uniform enforcement of a reasonable absence‑control policy does
not constitute retaliatory discharge.  See Haggar Clothing Co. v. Hernandez, 164
S.W.3d 386, 388 (Tex. 2005); Cazarez, 937 S.W.2d at 450; Carrozza,
876 S.W.2d at 313.








If an employee=s discharge, or other adverse employment
action such as being placed on indefinite medical leave, is required by the
uniform enforcement of a reasonable absence‑control policy, it cannot be
shown that the employee=s termination would not have occurred when
it did but for the employee=s assertion of a workers compensation claim.
 See Haggar Clothing Co., 164
S.W.3d at 388; Cazarez, 937 S.W.2d at 450; Carrozza, 876 S.W.2d
at 313.  When an employer produces
evidence that the absence‑control policy has been uniformly enforced,
resulting in the employee=s termination, then no violation of the anti‑retaliation
statute is shown.  See Fenley v. Mrs.
Baird=s Bakeries, Inc., 59 S.W.3d 314, 320 (Tex. App.BTexarkana 2001, pet. denied).

We conclude the summary judgment evidence
produced by appellant does not raise a fact issue regarding the District=s articulated reason for placing appellant
on indefinite medical leave.  Appellant
presented no evidence showing that she was placed on indefinite medical leave
because she filed a workers= compensation claim against the District or
even that the claim was a determining factor in the employment status
decision.  Accordingly, we hold the trial
court did not err in granting the District=s motion for summary judgment on appellant=s retaliatory discharge claim.  Appellant=s third issue is overruled.

                                         3.  Age and Gender Discrimination Claims

In her fourth issue, appellant contends the
trial court erred in granting the District=s motion for summary judgment on her age and
gender discrimination claims.

                                                              a.  Applicable Law








An employer may not discriminate against its
employees because of age or gender.  See
Tex. Lab. Code Ann. ' 21.051(1) (Vernon 2006).  In discrimination cases that have not been
fully tried on the merits, we apply the McDonnell Douglas burden
shifting scheme.  McDonnell Douglas v.
Green, 411 U.S. 792 (1973); Wal‑Mart Stores, Inc. v. Canchola,
121 S.W.3d 735, 739 (Tex. 2003).  Under
the McDonnell Douglas test, the plaintiff must first establish a prima
facie case of discrimination.  To meet
this burden, the plaintiff must show that (1) she is a member of a protected
class; (2) she was discharged; (3) she was qualified for the position from
which she was discharged; and (4) she was either replaced by someone outside
the protected class, replaced by someone younger, or was otherwise discharged
because of her age.  Russo v. Smith
Int=l, Inc., 93 S.W.3d 428, 435 (Tex. App.BHouston [14th Dist.] 2002, pet. denied)
(citing Baker v. Gregg County, 33 S.W.3d 72, 80 (Tex. App.BTexarkana 2000, pet. dism=d)).

b. 
Analysis

The District asserts that appellant failed
to show she was replaced with someone younger or of a different gender.  In support of this assertion, the District
presented summary judgment evidence showing that for eighty-five percent of the
time period in question, women of similar age drove appellant=s former bus route.  Seven women drove appellant=s route. 
The three women for whom age information was provided were as old as or
older than appellant.  The affidavit
evidence further shows that none of these drivers were permanent employees;
they were temporary drivers.  Though
appellant claimed a young male was employed to drive her bus route, she
presented no direct or circumstantial evidence to support her claim.

Because the summary judgment evidence
establishes that appellant was not discriminated against on the basis of age or
gender, we hold the trial court did not err in granting the District=s motion for summary judgment on these
claims.   Appellant=s fourth issue is overruled.

                                                 E.  Public
Policy Argument








In her fifth issue, appellant contends the
trial court erred by impliedly finding that the District=s policies are not contrary to public
policy.  Appellant asserts the District=s policy had an Aintentional and particularly unfair and
greater impact on workers= compensation claimants, and is utilized to
discourage the filing of worker=s [sic] compensation claim[s].@  A
necessary implication from this assertion is that the District=s policy has an intentional and greater
impact on workers= compensation claimants than on other
employees that are covered by the policy. 


Appellant cites Paragon Hotel Corp. v.
Ramirez, 783 S.W.2d 654, 658-59 (Tex. App.BEl Paso 1989, writ denied) in support of her
assertion.    In Paragon,
the employer used a system that effectively rewarded employees and their
supervisors for not filing injury reports or workers= compensation claims.  Id. 
Further, the evidence showed that the employer did not follow its own
policies and procedures in discharging the employee.  Id. at 659.

In the instant case, however, the summary judgment
evidence shows the District=s benefits policy applies to all employees absent
more than fifteen days. The
policy does not discourage, directly or indirectly, the filing of workers= compensation claims or injury reports.  Appellant presented no evidence showing how
the policy was applied differently to employees that filed workers= compensation claims from those who chose
other options, e.g., electing to receive accrued sick leave pay instead of
workers= compensation benefits.

Appellant also contends the District=s policy contravenes the policy of the Texas
Workers= Compensation Act.  The Texas Supreme Court has explained  the purpose of the Act as follows:

The Texas Legislature enacted the Act in
1913 in response to the needs of workers, who, despite escalating industrial
accidents, were increasingly being denied recovery.  The Act allowed injured workers, whose
employers subscribed to workers= compensation insurance, to recover without
establishing the employer=s fault and without regard to the employee=s negligence.  In exchange, the employees received a lower,
but more certain, recovery than would have been possible under the common law.








Kroger Co. v. Keng, 23 S.W.3d 347, 349‑50 (Tex. 2000)
(citations omitted).  The District=s policy does not deny employees a recovery
for their injury, and appellant does not complain that she was denied
compensation for her injury.

The Texas Supreme Court has held that if an
absence-control policy, such as the District=s policy, is reasonable and uniformly
applied to all employees, it is not contrary to public policy, nor does it
contravene the purpose behind the Texas Workers= Compensation Act.  See Carrozza, 876 S.W.2d at
313.

Accordingly, we conclude that appellant=s public policy argument is without
merit.  Appellant=s fifth issue is overruled.  

The trial court=s summary judgment is affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

Memorandum
Opinion delivered and filed this

the
20th day of July, 2006.   

 

 

 

 

 

 

 

 











[1]
The District is a
self-insured workers= compensation subscriber.





[2] The Zimlich case involves a
whistleblower claim.  See City of Fort
Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000).  However, the causation nexus required in that
case is applicable to section 451.001 cases. 
See Cont=l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Tex.
Dep=t of Human Servs. v. Hinds, 904 S.W.2d 629, 635‑36
(Tex. 1995); Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 667
(Tex. App.BCorpus Christi 1997, no pet.).





[3] For employees to be similarly
situated, their circumstances must be Anearly identical@ in all relevant respects.  See Winters v. Chubb & Son, Inc., 132
S.W.3d 568, 578 (Tex. App.BHouston [14th Dist.] 2004, no pet.); Wyvill v. United
Cos. Life Ins. Co., 212 F.3d 296, 304‑05 (5th Cir. 2000).  As evidence of how the District used its
policy to discriminate against employees similarly situated to her, appellant
presented the affidavit of Gloria Rodriguez. 
Rodriguez and appellant were both (1) injured on the job, (2) required
extensive medical treatment, (3) could not return to work within 180 days of
their injury, and (4) were placed on indefinite medical leave.  However, after becoming medically able to
return to work, Rodriguez twice applied to the District for a job; appellant
failed to apply at all.  This difference
distinguishes appellant from Rodriguez such that appellant=s claim that the two are Asimilarly situated@ is without merit.  Moreover, Rodriguez=s statement shows how the District
adhered to its 180-day policy, further negating the circumstantial proof of a
causal link between the appellant filing a workers= compensation claim and being
placed on indefinite medical leave.